**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Alonzie Lee Waites, | ) | Case No.: 04-06792-BGC-13 |
| | ) | |
| Debtor. | ) | |
| | | |
| Alonzie Lee Waites, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 04-00195 |
| | ) | |
| St. Clair County Department of | ) | |
| Human Resources and | ) | |
| Virene Waites, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The matters before the Court are a Motion to Transfer Case to State Court for Hearing filed on December 3, 2004, by the defendants; and an Objection to Motion to Transfer filed on December 30, 2004, by the plaintiff-debtor. The proceeding the defendant St. Clair County Department of Human Resources seeks to transfer is the Complaint filed by the debtor on October 8, 2004, in which the debtor asks this Court to find that unpaid child support is not dischargeable in this case pursuant to section 523.

After notice, a hearing was held on January 5, 2005. Appearing were John Bodie for the plaintiff-debtor; and Jane Evans for the defendants. The matter was submitted on the pleadings and arguments of counsel.

**I. Background**

There are three other matters pending in this case, all are related to the complaint. Those other matters are:

1. Confirmation;

2. The Chapter 13 trustee's Objection to Confirmation; and

3. The <u>Debtor's Objection to Claim 1</u>, the claim of DHR and Virene Waites.

All of these matters will be scheduled for hearing after this order is entered.

The defendant argues that the state court is in the better position to hear issues of nondischargeability and to determine the amount of the claim filed by DHR. The defendant alleges that the debtor has a history of failing to pay child support beginning with a decree of the St. Clair County, Alabama Circuit Court on March 18, 1980.

The debtor argues that even if he is in arrears on payments, the "judgments" rising from that decree are dischargeable, either because of their ages, or because he is not able to pay them, or because they were or were not assigned to the State for collection  He argues against transfer because he believes that he cannot receive a fair trial in state court and that this Court should determine the extent of the claim, whether to discharge it or fix an amount.

The most important fact in regard to the motion to transfer is that **the parties agree that whatever debt the debtor owes as a result of the state court's March 18, 1980 decree is <u>child support</u>.**

The second most important facts is that i**n his Chapter 13 plan, the debtor proposes to <u>pay all priority debts in full</u> and proposes to pay all <u>unsecured creditors 100%</u>**.

For the reasons expressed below, the Court finds that dischargeability is only slightly an issue in this proceeding. The real issue is what is the amount of DHR's claim. That issue must be decided by application of the priority provisions of the Bankruptcy Code and by way of the debtor's objection to claim. Both of those avenues are ones this Court should direct, not the state court.[1]

---

[1]This Court is aware of the admonition of the Court of Appeals for the Eleventh Circuit in <u>Carver v. Carver</u>, 954 F.2d 1573 (11th Cir. 1992) which reads:

> Decisions which involve alimony or child support, generally under continuing supervision by the state courts, could require the bankruptcy court to second guess the state court on such matters and could produce conflicting court decrees further aggravating an already delicate situation. Nor was it "the 'intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts--courts that would in turn, willy-nilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors.' " <u>Caswell</u>, 757 F.2d at 610-11 (quoting <u>In re Garrison</u>, 5 B.R. 256, 260 (Bankr.E.D.Mich.1980)). "It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.' " <u>In re</u>

2

## II. Applicable Law

### A. Bankruptcy Law

#### 1. Section 1328 of the Bankruptcy Code

Section 1328 of the Bankruptcy Code reads in pertinent part:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, **the court shall grant the debtor a discharge of all debts provided for by the plan** or disallowed under section 502 of this title, **except any debt**--

(1) provided for under section 1322(b)(5) of this title;

(2) **of the kind specified in paragraph (5)**, (8), or (9) **of section 523(a)** of this title; or

(3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime.

---

MacDonald, 755 F.2d at 717-19 (quoting In re Graham, 14 B.R. 246, 248 (Bankr.W.D.Ky.1981)).

Indeed, Congress has implicitly recognized the importance of such obligations because neither alimony, maintenance, nor support obligations are dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5). [FN9] This court has held that a determination of what domestic obligations are dischargeable may not include a determination of whether the recipient spouse needed the arrearages, because "assessment of the ongoing financial circumstances of the parties to a marital dispute would of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts." In re Harrell, 754 F.2d 902, 907 (11th Cir.1985). Lastly, there is a danger that bankruptcy will be used as a weapon in an on-going battle between former spouses over the issues of alimony and child support or as a shield to avoid family obligations. It is important that "[t]he bankruptcy code ... not be used to deprive dependents, even if only temporarily, of the necessities of life." Caswell, 757 F.2d at 610.

It is precisely this type of situation, where determination of an issue otherwise within the jurisdiction of the bankruptcy court would entangle the court in matters primarily of state concern, that Congress addressed in the statute outlining the bankruptcy jurisdiction of the federal courts.

Id. at 1579 (footnote omitted).

3

11 U.S.C. § 1328 (a) (emphasis added).

## 2. Section 523(a)(5)

The kind of debt referred to above as a debt specified in paragraph 5 of section 523(a) includes a debt to:

> (5) to a spouse, former spouse, **or child of the debtor**, for alimony to, maintenance for, or **support of such spouse or child**, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that--
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State);

11 U.S.C. § 523(a)(5) (emphasis).

The combination of the effects of section 1328 and section 523(a)(5) make child support debts nondischargeable in Chapter 13 case with the exception of section 523(a)(5)(A), described above and discussed below. Consequently, because the parties agree that the debt involved here is solely child support, that debt, with the exception outlined above, is not dischargeable in this case. Whether any portion of it is dischargeable can be determined only after the amount of the claim is fixed and a determination of whether the claim is a priority claim, an unsecured claim, or both.

## 3. Section 507(a)(7)(A)

Section 507(a)(7)(A) reads:

> (a) The following expenses and claims have priority in the following order:
>
> > (7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, **but <u>not to the extent</u> that such debt –**

4

> **(A) is assigned to another entity, voluntarily, by operation of law, or otherwise**; or
>
> (B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

11 U.S.C. § 507(a)(7) (emphasis added).[2]

Notwithstanding the plain language of section 507(a)(7)(A), because of the recognized disagreements among bankruptcy courts on the meaning of that language, especially in regard to assignments of child support claims to governmental entities, this Court must first consider whether it may rely solely on that plain language or whether something else must be considered. There are two principal positions on this question.

Courts that do not believe that the plain language controls, believe that any resolution of a section 507(a)(7)(A) dispute and any interpretation of the meaning of section 507(a)(7)(A) must include a comparison of the language of that section to the language of section 523(a)(5), (regarding dischargeability of child support payments). Those courts conclude that if such a comparison is made, that the language of section 507(a)(7)(A) must conform to the language of section 523(a)(5) in favor of priority status for child support claims assigned to a governmental entity.

In contrast, those courts that believe that the language of section 507(a)(7)(A) is not ambiguous, conclude that the plain language controls. That conclusion results in non-priority status for claims assigned to governmental entities.

The opinion in In re Beverly, 196 B.R. 128 (Bankr.W.D.Mo.1996) is representative of the "section 523" position. That opinion reads in part:

> Section 507(a)(7) is nearly identical to § 523(a)(5), except that § 523(a)(5) provides two exceptions to the exception as to assignments, whereas § 507(a)(7) does not. Pertinent to the case at bar is § 523(a)(5)(A), which deals with assignments to government agencies. Section 523 provides, in relevant part:

---

[2]While the debtor-creditor relationships here are atypical, at least in the bankruptcy context, the debts in dispute are nonetheless captured by section 507(a)(7). At a minimum, each debt is, as required by section 507(a)(7)(A), a claim for a debt to a child of the debtor, for maintenance or support of such child in connection with an order of a court of record, in accordance with State law.

5

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State)....

In other words, under § 523(a)(5)(A), if the debt for child support was assigned to a governmental unit it cannot be discharged in bankruptcy. In re Donelson, 153 B.R. 995, 996 (Bankr.W.D.Mo.1993). If, on the other hand, it was assigned to a non-governmental agency, it would be dischargeable. As the language excepting governmental assignees does not appear in § 507(a)(7), this Court must determine whether an assignment to a government agency affects the priority of a child support debt as it does the dischargeability of the debt.

Generally, Congress is presumed to act intentionally when it includes language in one section but omits it in another. Estate of Bell v. C.I.R., 928 F.2d 901, 904 (9th Cir.1991). However, it is also true that Congress is presumed not to have intended to enact meaningless legislation, In re Hampton, 142 B.R. 51, 52 (Bankr.D.Conn.1992), and "absent a clear manifestation to the contrary, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." In re Vickers, 116 B.R. 149, 154 (Bankr.W.D.Mo.1990) (citing Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir.1983)).

In the situation at bar, the omission of the exception to the exception from § 507(a)(7) is, in its effect, meaningless when it is read harmoniously with § 523(a)(5)(A) and the judicial interpretation of that section. Section 523(a)(5)(A) still mandates that claims for child support

6

which were assigned to a government agency are nondischargeable. And as several courts (including the Eighth Circuit) found prior to the addition of § 507(a)(7) to the Act, those claims are to be given preferential treatment in a Chapter 13 plan. If they are not, the automatic stay may be lifted as to the child support arrearages and the claimant may pursue other remedies. Bunn, 170 B.R. 670. Such a claim should not be classified with other general unsecured debts receiving only a percentage of the claim. As such, a debt for child support which has been assigned to a government agency should be treated as though it is a priority debt in a Chapter 13 plan: it should be paid in full.

Id. at 131-32 (footnotes omitted).[3]

---

[3]For a different perspective, but also an excellent explanation of the controversy, see the opinion in In re Parker, 1999 WL 1116825, *2 (Bankr.N.D.Ill. 1999). That opinion reads in part:

> Section 507(a)(7) of the Bankruptcy Code has been analyzed by several courts faced with issues similar to those now before this Court. **Despite the lack of any apparent ambiguity in section 507(a)(7) of the Bankruptcy Code, the cases do not all reach the same result**. Compare In re Burns, 216 B.R. 945 (Bankr.S.D.Cal.1998) with In re Beverly, 196 B.R. 128 (Bankr.W.D. Mo.1996).
>
> In re Burns, 216 B.R. 945 (Bankr.S.D.Cal.1998), represents one view with respect to the interpretation of section 507(a)(7) of the Bankruptcy Code. In Burns, the debtors sought to modify their chapter 13 plan to separately classify prepetition claims for child support which had been assigned to a government entity from other unsecured claims in order to pay the prepetition claims for child support in full while paying nothing on the other unsecured claims. The court recognized that support claims that have been assigned are treated differently by the plain language of sections 523(a)(5) and 507(a)(7) of the Bankruptcy Code.
>
> The major difference is that section 507(a)(7) of the Bankruptcy Code, which deals with the priority to be afforded support claims, excludes support claims that have been assigned to another entity from receiving priority treatment. By the same token, section 523(a)(5) of the Bankruptcy Code deals with the dischargeability of support claims. Section 523(a)(5) of the Bankruptcy Code provides that while most obligations for support are nondischargeable, if the claim for support has been assigned to another entity, it is dischargeable. 11 U.S.C. sec. 523(a)(5). However, section 523(a)(5) of the Bankruptcy Code contains what might be deemed an exception to the exception from dischargeability for support claims. If a support claim is assigned to a governmental entity, it is nondischargeable. 11 U.S.C. sec. 523(a)(5)(A). There is no analogous exception to the exception in section 507(a)(7) of the Bankruptcy Code. Some courts have regarded the absence of an exception to the exception in section 507(a)(7) of the Bankruptcy Code as a legislative gaffe. Not so the

The opinion in In re Burns, 216 B.R. 945 (Bankr. S.D. Cal. 1998) is representative of the plain language position. That opinion reads in part:

> Originally, section 523(a)(5) and section 507(a)(7) contained identical language. A support claim assigned to a governmental entity was both dischargeable and was not entitled to priority in distribution. By virtue of a 1981 amendment to section 523(a)(5)(A) debts assigned to a governmental entity as a condition of AFDC eligibility became non-dischargeable. However, there was no corresponding change to section 507(a)(7)(A). (See generally, Lawrence P. King, 4 Collier on Bankruptcy ¶ 523.11[8] at 523-88-9.) Although some courts have assumed this was an oversight, this Court believes if Congress intended to accord priority status to assigned support debts, **it has amended the Bankruptcy Code a sufficient number of times since 1981** to have made the appropriate change. Consequently, this Court agrees with the Debtors' implicit assumption that the assigned support claim is non-dischargeable but does not have priority in payment.

Id. at 947 (footnote omitted).

This Court agrees with In re Burns because that court's interpretation conforms to the rules of statutory interpretation employed by the Court of Appeals for the Eleventh Circuit. Writing for the court in In re Griffith, 206 F.3d 1389, 1393 (11th Cir. 2000), cert. denied, 531 U.S. 826 (2000), Circuit Judge Stanley L. Birch, Jr. explains:

> Interpretation of a statute begins "with the language of the statute itself." United States v. Ron Pair Enters., 489 U.S. 235, 241,109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). As a general rule, if the language of the statute is plain, then our interpretative function ceases and we should " 'enforce [the statute] according to its terms.' " Id. (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

---

Burns court. The court stated: "Although some courts have assumed this was an oversight (citations and footnote omitted), this Court believes if Congress intended to accord priority status to assigned support debts, it has amended the Bankruptcy Code a sufficient number of times since 1981 to have made the appropriate change." Id. at 947.

Relying on the plain language of section 507(a)(7) of the Bankruptcy Code, the Burns court found that the claim for child support was nondischargeable but was not, nevertheless, entitled to priority treatment. Id. at 947.

Id. at *2-*3 (emphasis added).

8

In interpreting the language of a statute, we generally give "the 'words used' their 'ordinary meaning.' " Moskal v. United States, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)). We also use interpretative tools, the "canons of construction," which "are no more than rules of thumb that help courts determine the meaning of legislation." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Among these canons of construction are the principles "that Congress is presumed to be aware of judicial interpretations of a statute," NLRB v. Bildisco & Bildisco, 465 U.S. 513, 524, 104 S.Ct. 1188, 1195, 79 L.Ed.2d 482 (1984), superseded by statute on other grounds, 11 U.S.C. § 1113 (1984), that "courts should disfavor interpretations of statutes that render language superfluous," Connecticut Nat'l Bank, 503 U.S. at 253, 112 S.Ct. at 1149, and that "[w]e assume that Congress is aware of existing law when it passes legislation," Miles v. Apex Marine Corp., 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990). "Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity." Burlington N. R.R. Co. v. Oklahoma Tax Comm., 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987).

In conformity with the above, this Court finds that the language of section 507(a)(7)(A) is plain. Consequently, the Court concludes that its "interpretative function ceases" and it should enforce section 507(a)(7)(A) according to its terms. The key to that enforcement is of course: What constitutes an assignment? Or in other words: Under section 507(a)(7)(A), when is a claim, "assigned to another entity?" The answer is a matter of state law.

### B. Alabama Law

Section 38-10-4, Code of Alabama 1975 reads:

> As a condition of eligibility for aid, each recipient of aid to families with dependent children shall be deemed, by accepting aid, <u>to have made an assignment to the department of the right to any support owed **up to the amount of aid paid by the department**</u> to the recipient in her own behalf or in behalf of any other person for whom the recipient is receiving aid. The department shall be subrogated to the right of such child or recipients or the person having custody to collect and receive all child support payments and to initiate any support action existing now or in the future under the laws of Alabama.

Code of Alabama 1975, § 38-10-4 (emphasis added).

9

Case 04-00195-BGC    Doc 16    Filed 03/22/05    Entered 03/22/05 09:35:23    Desc Main
Document    Page 9 of 11

That section, in conjunction with related sections, has been interpreted as:

> The Child Support Act of 1979, codified as sections 38-10-1 through [38-10]-11, Code 1975, provides that recipients of aid to families with dependent children are deemed to have assigned to DHR the right to any child support owed to or for any child up to the amount of aid paid by DHR. The DHR is given the right to collect and receive all child support payments due to the custodian of the child. See § 38-10-4, Code 1975. It also is provided in said act that where child support has been ordered by a court incident to a divorce decree the debt shall be limited to the amount specified in the court decree. The liability for such debt to DHR shall apply only to the support payments made during the period when aid was granted to the recipient. § 38-10-6, Code 1975.
>
> After an assignment has been made, child support collections shall be paid directly to DHR and it will make distribution according to the Social Security Act and amendments thereto. § 38-10-8, Code 1975. The legislature through the provisions of the Child Support Act has given DHR the authority to take appropriate action to assure that a person owing the obligation of child support provides that support. To enable it to carry out this duty, DHR has been authorized by the legislature to collect all child support payments due and to make proper distribution of those payments. <u>The act clearly provides that DHR can retain only that amount necessary to satisfy the debt incurred by the recipient of aid from DHR. In other words, DHR can only retain an amount from the child support collections sufficient to repay it for the benefits it has given the recipient.</u> **The balance, if any, will be paid to the child's custodian**.

<u>Johns v. Johns</u>, 500 So.2d 1160, 1160-61 (Ala.Civ.App. 1986) (parenthetical and emphasis added).

Clearly, in Alabama a child support claim is assigned to the State whenever the State pays benefits to a recipient in lieu of that claim; however, it is also clear that the amount of any such assignment is only the amount, "up to the amount paid..." by the State. The recipient retains the remainder of the claim. And any amount collected by the State over the benefits amount must be returned to the recipient.

The parties here agree that whatever debt the debtor owes to DHR and Ms. Waites, is child support. Therefore that debt is not dischargeable in this case pursuant to section 1328 and section 523(5).[4]

---

[4] The debtor also contends that the debt is dischargeable pursuant to section 523(a)(15). The debtor is not precluded from making that argument later.

10

As such the remaining issues are:

1. What is the amount of the child support claim?

2. Was part of that claim assigned to DHR?

3. Is that claim a priority unsecured claim or a general unsecured claim, or partly both?

This Court is in a better position to address these issues through application of section 507, section 523, and section 1328. Consequently, the Court finds that the <u>Motion to Transfer</u> is due to be denied. The reaming issues in this case will be decided through of the <u>Debtor's Objection to Claim</u> and confirmation, both of which, along with the trustee's <u>Objection to Confirmation</u>, will be rescheduled.

A separate Order will be entered contemporaneously with this Memorandum Opinion.

DONE this the 22nd day of March, 2005.

                                       /s/Benjamin Cohen
                                       BENJAMIN COHEN
                                       United States Bankruptcy Judge

cc:     Plaintiff-Debtor
        John Bodie, Attorney for Plaintiff-Debtor
        Defendants
        Jane Evans, Attorney for Defendants
        Trustee